■ In the Matter of SUSIE JACKSON et al., Appellants, v CITY OF NEW ROCHELLE et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to review a "negative declaration" of the City Council of the City of New Rochelle, dated April 21, 1987, which dispensed with the necessity of preparation of an environmental impact statement in connection with a proposed acquisition of property by the city, the petitioners appeal from a judgment of the Supreme Court, Westchester County (Cowhey, J.), entered February 10, 1988, which dismissed the petition.

Ordered that the judgment is affirmed, without costs or disbursements.

On or about January 15, 1987, the respondent City of New Rochelle entered into a contract to purchase three two-family houses on Lawn Avenue in the City of New Rochelle. The city proposed to demolish the low-rental housing and construct a 58-car parking lot on the premises.

Subsequently, the petitioners commenced this CPLR article 78 proceeding alleging, *inter alia,* that the city had failed to comply with the State Environmental Quality Review Act (hereinafter SEQRA [ECL art 8]) in carrying out its plan to

convert the land from residential use to parking use. The petitioners include the three tenants remaining in the building and two "homeless" persons, Sarah McGee and Irene Santoro, who live in motels remote from the project site.

We agree with the trial court that McGee and Santoro do not have standing to raise SEQRA claims in the absence of showings that the project would have a harmful effect on them and that the interest they assert is arguably within the zone of interest protected by SEQRA *(see, Matter of Department of Personnel v City Civ. Serv. Commn.,* 60 NY2d 436, 442-443; *Glen Head—Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 490). They are not residents of the community which may be affected by the project since they are outside the "existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character" in close proximity to this project *(see,* ECL 8-0105 [6]; 6 NYCRR 617.2 *[l]; cf., Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 366). Although demolition of the housing will cause a reduction of eight units of low-cost rental housing, there has been no showing that demolition will interfere with these two petitioners.

Turning now to the claims raised by the remaining petitioners, the primary question with which we are concerned is whether the city, in issuing its negative declaration, complied with the procedural and substantive requirements of SEQRA. These petitioners claim that the city failed to adequately consider whether demolition of the three two-family houses will affect the "existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character." An environmental assessment form (hereinafter EAF) was completed which, *inter alia,* describes the subject property as .44 acres in an area zoned "C-2 Commercial". The property abuts a line of stores which front on a main street. After review of the EAF, the city found that the action would not have a significant effect on the character of the existing community and determined that the demolition of the buildings and construction of a parking lot would not significantly affect the environment. In providing a reasoned elaboration of the conclusion, it was explained that the physical change at the site would have a positive effect on the surrounding area since the project would eliminate the blight of "substandard", "dilapidated" housing and provide much needed parking. It was also noted that appropriate relocation housing would be found for the three families remaining in the buildings before the buildings would be transferred to the

city. Based on our review of the record, we agree with the trial court that the City Council's determination is supported by the evidence *and* is not arbitrary and capricious *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400 [1986]).

The petitioners correctly point out that the environmental assessment form and negative declaration were prepared after the city had contracted to buy the subject property. However, the proposed conversion had not yet been submitted to the city's Planning Board. SEQRA requires that an agency make its initial determination of significance "[a]s early as possible in the formulation of a proposal" (ECL 8-0109 [4]). Although it would have been preferable if the city had made its initial determination of significance prior to contracting to purchase the property, we conclude that, under the circumstances of this case, the timing of its determination of nonsignificance did not violate the mandates of SEQRA.

We have reviewed the petitioners' additional contentions and find them to be without merit. Bracken, J. P., Kunzeman, Weinstein and Kooper, JJ., concur.