(June 14, 1996)

In the Matter of HERITAGE COALITION, INC., et al., Appellants, v CITY OF ITHACA PLANNING AND DEVELOPMENT BOARD et al., Respondents. (Proceeding No. 1.) In the Matter of HERITAGE COALITION, INC., et al., Appellants, v ITHACA LANDMARKS PRESERVATION COMMISSION et al., Respondents. (Proceeding No. 2.) [644 NYS2d 374] —Spain, J.

Appeal from a judgment of the Supreme Court (Rumsey, J.), entered April 3, 1996 in Tompkins County, which, in a proceeding (No. 2) pursuant to CPLR article 78, dismissed the petition as premature.

In October 1994 respondent Cornell University submitted an application for a building permit to respondent City of Ithaca for the renovation of a building on its campus in Tompkins County known as Sage Hall; the project involves extensive restoration. Because Sage Hall has been designated an historic landmark by the Ithaca Common Council, respondent Ithaca Landmarks Preservation Commission (hereinafter ILPC) is required to review all construction plans which entail "a material change of use or appearance" of the exterior of the building and issue a certificate of appropriateness (see, City of Ithaca Landmarks Preservation Ordinance §§ 228-3, 228-4 [E] [1]). In

February 1995 the ILPC granted conceptual approval for the project conditioned on site plan approval and further environmental review by respondent City of Ithaca Planning and Development Board (hereinafter the Planning Board). In May 1995 petitioners commenced a proceeding pursuant to CPLR article 78 (hereinafter Sage I) seeking to annul, *inter alia*, the ILPC's February 1995 determination alleging that Ithaca and the ILPC failed to comply with the mandates of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) and the City Environmental Quality Review Ordinance (hereinafter CEQRO). Supreme Court dismissed the Sage I petition, finding the proceeding to be premature in that the determinations being challenged were not final.

In August 1995 Cornell submitted an application and part one of the long environmental assessment form (hereinafter LEAF) for site plan review to the Planning Board. After declaring itself lead agency, the Planning Board issued a negative declaration for the project and granted preliminary site plan approval. Following a public hearing, the ILPC granted Cornell a certificate of appropriateness. In December 1995 the Planning Board granted final site plan approval for the project. In January 1996 petitioners commenced a second proceeding pursuant to CPLR article 78 (hereinafter Sage II) challenging, *inter alia*, the ILPC's decision to issue the certificate of appropriateness and the Planning Board's decision to issue a negative declaration and grant final site plan approval for the project. Supreme Court dismissed the Sage II petition, finding that petitioners lacked standing. Petitioners appeal both judgments and, by order of this Court, the appeals have been consolidated.*

In the instant proceedings petitioners are Barbara Ebert, a resident of Ithaca, and Heritage Coalition, Inc., a private, not-for-profit corporation which works "to preserve the cultural heritage of central New York through advocacy and education related to historic preservation and concerns and issues". Heritage bases its organizational standing on three members who reside in Tompkins County—Ebert, Ithaca resident Michael Tomlan and Kermit Parsons, a resident of the Town of Dryden. All three members are educators at Cornell's College of Architecture, Art and Planning, who espouse a fond appreciation for Sage Hall and have managed to use the characteristics of the structure in their respective courses of instruction. Further, Ebert avers that due to her background and involvement

---

* By decision and order dated April 10, 1996, this Court enjoined Cornell from making any changes to the exterior of Sage Hall pending appeal.

in historic preservation, she has "an appreciation for the historic importance of Sage Hall that is different from that of the ordinary citizen or resident of Ithaca".

It is well settled that petitioners bear the burden of establishing standing in these proceedings (*see, Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 769). Neither Ebert nor Heritage owns the property subject to the challenged determination (*cf., Matter of Har Enters. v Town of Brookhaven*, 74 NY2d 524) or owns property which lies in close proximity to it which would give rise to a presumption that the alleged SEQRA and CEQRO violations adversely affect them (*see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428). Therefore, petitioners must demonstrate that they will suffer an environmental injury in fact (i.e., an injury that is different from that of the public at large) and that the alleged injury falls within the zone of interest sought to be promoted or protected by the statute under which the governmental action was taken (*see, Society of Plastics Indus. v County of Suffolk, supra*, at 772-773; *Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, supra*, at 433; *Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 10). In our view, petitioners have failed in their burden to establish standing.

Appreciation for historical and architectural buildings does not rise to the level of injury different from that of the public at large for standing purposes. Nor does the use of a building as a demonstrative teaching tool constitute a "use" sufficient to confer standing (*cf., Matter of Industrial Liaison Comm. v Williams*, 131 AD2d 205, 209-210, *affd* 72 NY2d 137). The impact the project is alleged to have on Ebert, including the diminution of her appreciation of Sage Hall and her use of it as a teaching tool, is not, without more, within the zone of interest sought to be promoted or protected by either SEQRA or CEQRO (*cf., Matter of Many v Village of Sharon Springs Bd. of Trustees*, 218 AD2d 845; *Matter of Lo Lordo v Board of Trustees*, 202 AD2d 506). While neither Ebert nor her students will be able to "observe" Sage Hall as it existed prior to being renovated, nothing about the project prohibits Ebert from continuing to teach about the architectural history of Sage Hall nor others from learning about same.

We further conclude that Heritage lacks standing because it has failed to meet the "key" requirement to organizational standing, i.e., that "one or more of its members would have standing to sue" (*Society of Plastics Indus. v County of Suffolk, supra*, at 775). As with Ebert, Tomlan's and Parsons' appreciation for and use of Sage Hall as it presently exists does not

confer standing upon them. Heritage's remaining contentions are also without merit. The close proximity of Tomlan's residence to Sage Hall (approximately one half mile), without more, is insufficient to confer standing (*see, Matter of Many v Village of Sharon Springs Bd. of Trustees, supra*), and the absence of environmental injury different from that of the public at large, as herein, is fatal (*see, Society of Plastics Indus. v County of Suffolk, supra*). Tomlan's claim that the restoration will detrimentally affect the value of his property is unsubstantiated. Accordingly, dismissal of the Sage II petition was proper. Finally, although not raised by the parties, the Sage I petition should also have been dismissed on lack of standing grounds—an issue which can be raised by this Court *sua sponte* (*see, Matter of Battenkill Assn. of Concerned Citizens v Town of Greenwich Planning Bd.*, 156 AD2d 863).

Mercure, J. P., Crew III, Casey and Peters, JJ., concur. Ordered that the judgments are affirmed, without costs.