■ In the Matter of ENERGY ASSOCIATION OF NEW YORK STATE et al., Petitioners, and PUBLIC UTILITY LAW PROJECT OF NEW YORK, INC. et al., Appellants, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents. [710 NYS2d 662] —Peters, J. Appeal from a judgment of the Supreme Court (Harris, J.), entered November 26, 1996 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Public Service Commission setting forth a plan for competition in the electric utility industry.

In March 1993, respondent Public Service Commission (hereinafter the PSC) commenced Phase I of an administrative proceeding designed "to examine the competitive opportunities and the pricing and policy issues facing electric and gas utilities and their customers". The PSC's order directed affected gas and electric utilities to respond to questions concerning competition and pricing as well as eligibility standards that might be established in response thereto. Phase II was instituted in August 1994 to investigate issues "related to the future regulatory regime for electric utilities in light of competition opportunities". As therein stated, "[t]he overall objective * * * [wa]s to identify regulatory and rate making practices that will assist in the transition to a more competitive electric industry designed to increase efficiency in the provision of electricity while maintaining safety, environmental, affordability, and service quality goals".

After a collaborative process, the PSC adopted principles in June 1995 to foster the transition to competition; the next part of the proceeding was to focus upon issues relating to both wholesale and retail competition. In December 1995, after collaborative meetings, expert presentations, reports and written

comments by the parties, it was recommended that the PSC adopt a transition leading to a flexible retail "poolco" model* for the electric industry in New York. Petitioner Public Utility Law Project of New York, Inc. (hereinafter PULP) challenged the recommendation by contending, *inter alia*, that its wholesale poolco model should have been adopted.

In May 1996, the PSC issued Opinion No. 96-12 which reviewed the procedural history and the parties' positions. It thereafter set forth a "vision of the future regulatory regime and the goals * * * expect[ed] to be achieved * * * describ[ing] the strategies that should be used to accomplish the goals." The opinion adopted the flexible retail poolco model and called for filings by major electric companies on the implementation of the new strategy for the electric industry. After petitions for rehearings and clarification, the PSC issued Opinion No. 96-17 which concluded that none of the issues raised by these challenges warranted a change in the policy vision set forth in Opinion No. 96-12.

In September 1996, petitioner Energy Association of New York State, a trade association representing the eight major gas and electric utilities in New York, along with six of the individual utilities (hereinafter collectively referred to as the Energy Association), commenced this proceeding alleging that Opinion No. 96-12 was not properly promulgated and that the PSC did not have the legal authority to adopt the plan set forth therein. The Energy Association also sought an order annulling both that opinion and its affirmance, and a declaration that they had no binding regulatory effect. Finally, it sought to enjoin the PSC from the implementation of the plan along with a declaration that it had no statutory or legal authority to have so devised such plan. Various parties intervened.

In October 1996, PULP and petitioner Sandra Myers, a residential electric customer and member of the board of directors of PULP, commenced a separate proceeding against the PSC challenging Opinion No. 96-12. They sought declaratory and injunctive relief pursuant to State Finance Law § 123-b to stop the implementation of the strategy detailed therein. PULP and Myers also alleged an illegal expenditure of State funds to review the plans filed by the utilities to determine their conformity with Opinion No. 96-12, a violation of the PSC's statutory obligations to fix rates, an unlawful exemption to electric service companies from the Home Energy Fair Practices Act (Public Service Law art 2) and violations of both the

---

* Under a poolco model, retail customers would be able to purchase electricity directly from electric service companies.

State Constitution and the State Administrative Procedure Act. PULP and Myers thereafter successfully moved, by agreement of all parties, for leave to intervene in the proceeding initiated by the Energy Association.

Supreme Court found for the PSC. Although the Energy Association, PULP and Myers, as well as various other petitioners, appealed Supreme Court's judgment, the Energy Association later successfully moved to withdraw and discontinue its appeal without prejudice. With the exception of PULP and Myers, the remaining petitioners have abandoned their appeal. Hence, in light of the procedural posture in which this appeal is before us, we must first address an issue, not addressed by Supreme Court (*see, Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd.*, 228 AD2d 862, 865, *lv denied* 88 NY2d 809; *Matter of Battenkill Assn. of Concerned Citizens v Town of Greenwich Planning Bd.*, 156 AD2d 863) yet raised by the parties in their pleadings (*see, Matter of Concerned Citizens of Wilton v Town Bd.*, 203 AD2d 768, 768-769), as to whether PULP and Myers have the requisite standing to pursue the issues presented herein (*see, Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761).

Under State Finance Law § 123-b (1), citizen taxpayers are permitted to "maintain an action * * * against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property." Although the Court of Appeals has cautioned that "[s]ince most activities can be viewed as having some relationship to expenditures * * * too broad a reading of section 123-b would create standing for any citizen who had the desire to challenge virtually all governmental acts" (*Rudder v Pataki*, 93 NY2d 273, 281); statutory authorization for individual taxpayers will not be extended " 'to obtain judicial scrutiny of the [State's] nonfiscal activities' " (*Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 589, quoting *Matter of Urban League v County of Monroe*, 49 NY2d 551, 556).

The thrust of the contentions raised by both PULP and Myers is that the PSC has unlawfully expended State funds by its implementation, promotion and facilitation of orders restructuring the electric industry along with its interpretation of the applicability of the Home Energy Fair Practices Act within this new regulatory scheme. As these claims are identical to those made in recent cases dismissing PULP's petitions (*see, Matter of Public Util. Law Project v New York State Pub. Serv.*

*Commn.*, 263 AD2d 879, *lv denied* 94 NY2d 755), wherein these allegations were characterized as a challenge to nonfiscal activity "rather than a specific challenge to the expenditures of identifiable State funds" (*id.*, at 881; *see*, *Public Util. Law Project v New York State Pub. Serv. Commn.*, 252 AD2d 55, 58; *see also*, *Matter of Gerdts v State of New York*, 210 AD2d 645, 647, *lv dismissed* 85 NY2d 856, *lv denied* 85 NY2d 810), there exists an insufficient "nexus to fiscal activities of the State to allow for section 123-b standing" (*Rudder v Pataki, supra*, at 281).

Nor do we find that PULP and Myers are entitled to common-law standing. To contest an administrative determination, a party must demonstrate an injury in fact which falls within the zone of interest that the relevant statute seeks to protect and is different in kind or degree from that suffered by the general public (*see*, *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587, *supra*; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 771-775, *supra*). PULP is not a residential electric customer and therefore it, like Myers, who did not elect to receive service from an electric service company, fails to suffer from an injury resulting from the action of the PSC (*see*, *Matter of Public Util. Law Project v New York State Pub. Serv. Commn., supra*, at 881; *Public Util. Law Project v New York State Pub. Serv. Commn., supra*, at 59); even a potential injury in the form of increased rates for Myers as an electric customer is speculative (*see*, *Matter of Town of E. Hampton v State of New York*, 263 AD2d 94).

For PULP to have organizational standing, its last viable predicate, one or more of its members must have standing to sue, the association must be an appropriate representative of interests that are germane to its purposes and "neither the asserted claim nor the appropriate relief [can] require[ ] the participation of the individual members" (*Society of Plastics Indus. v County of Suffolk, supra*, at 775). Having failed, at a minimum, to demonstrate that any of its members would have individual standing (*see*, *Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd.*, 228 AD2d 862, 864-865, *supra*), no basis exists for PULP to pursue organizational standing.

For these reasons, the judgment of the Supreme Court is affirmed.

Crew III, J. P., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs. [*See*, 169 Misc 2d 924.]