*141 Opinion for the Court filed by Circuit Judge KAVANAUGH, in which Chief Judge GINSBURG and Circuit Judge ROGERS join.
Concurring opinion filed by Circuit Judge ROGERS.
KAVANAUGH, Circuit Judge.
Ratified in 1791, the First Amendment to the United States Constitution provides in part that “Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances.” Plaintiffs are citizens who petitioned various parts of the Legislative and Executive Branches for redress of a variety of grievances that plaintiffs asserted with respect to the Government’s tax, privacy, and war policies. Alleging that they did not receive an adequate response, plaintiffs sued to compel a response from the Government.
Plaintiffs contend that the First Amendment guarantees a citizen’s right to receive a government response to or official consideration of a petition for redress of grievances. Plaintiffs’ argument fails because, as the Supreme Court has held, the First Amendment does not encompass such a right. See Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 288, 285, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984); Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979).
I
Plaintiffs are numerous individuals and an organization that creatively calls itself “We the People.” For purposes of this appeal, we take the allegations in the complaint as true. According to plaintiffs, they have engaged since 1999 in “a nationwide effort to get the government to answer specific questions” regarding what plaintiffs view as the Government’s “violation of the taxing clauses of the Constitution” and “violation of the' war powers, money and ‘privacy’ clauses of the Constitution.” Joint Appendix (“J.A.”) 80 (Am. CompU 3). Plaintiffs submitted petitions with extensive lists of inquiries to various government agencies. On March 16, 2002, for example, plaintiffs submitted a petition with hundreds of inquiries regarding the tax code to a Member of Congress and to various parts of the Executive Branch, including the Department of Justice and the Department of the Treasury. On November 8, 2002, plaintiffs presented four petitions to each Member of Congress. Those petitions concerned the Government’s war powers, privacy issues, the Federal Reserve System, and the tax code. On May 10, 2004, plaintiffs submitted a petition regarding similar issues to the Executive Branch, including the Department of Justice and the Department of the Treasury.
Plaintiffs contend that the Legislative and Executive Branches have responded to the petitions with “total silence and a lack of acknowledgment.” J.A. 85 (Am. Comply 35). In protest, some plaintiffs have stopped paying federal income taxes.
Based on their view that the Government has not sufficiently responded to their petitions, plaintiffs filed suit in the United States District Court for the District of Columbia. They raised two claims. First, plaintiffs contend that the Government violated their First Amendment right to petition the Government for a redress of grievances by failing to adequately respond to plaintiffs’ petitions. In particular, plaintiffs contend that the President, the Attorney General, the Secretary of the Treasury, the Commissioner of the Internal Revenue Service, and Congress neglected their responsibilities under the First Amendment to respond to plaintiffs’ petitions. Plaintiffs want the Government to enter into “good faith exchanges” with *142 plaintiffs and to provide “documented and specific answers” to the questions posed in the petitions. J.A. 78 (Am.Compl.).
Second, plaintiffs claim that government officials&emdash;by seeking to collect unpaid taxes&emdash;have retaliated against plaintiffs’ exercise of First Amendment rights. Plaintiffs therefore asked the District Court to enjoin the Internal Revenue Service, the Department of Justice, and other federal agencies from retaliating against plaintiffs’ exercise of their constitutional rights (in other words, to prevent the Government from collecting taxes from them).
The Government has responded that the federal courts lack jurisdiction over either claim because the Government has not waived its sovereign immunity with respect to the causes of action asserted by plaintiffs. As to the Petition Clause claim, the Government has contended in the alternative that plaintiffs have failed to state a claim for which relief could be granted because the Petition Clause does not require the Government to respond to or officially consider petitions.
The District Court dismissed plaintiffs’ complaint. We The People v. United States, No. 04-cv-1211, slip op. at 6, 2005 WL 2473698 (D.D.C. Aug. 31, 2005). The Court ruled that the First Amendment does not provide plaintiffs with the right to receive a government response to or official consideration of their petitions. Id. at 2-3. In addition, the District Court concluded that the Anti-Injunction Act bars plaintiffs’ claim for injunctive relief with respect to the collection of taxes. See id. at 5 (citing 26 U.S.C. § 7421).
II
Plaintiffs raise two legal arguments on appeal. First, plaintiffs contend that they have a First Amendment right to receive a government response to or official consideration of their petitions. Second, plaintiffs argue that they have the right to withhold payment of their taxes until they receive adequate action on their petitions.
The Government renews its argument that plaintiffs’ claims are barred by sovereign immunity. In response, plaintiffs have contended that Section 702 of the Administrative Procedure Act waives the Government’s sovereign immunity. That section provides: “A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.... The United States may be named as a defendant in any such action ....” 5 U.S.C. § 702. The Government acknowledges that Section 702 waives sovereign immunity from suits for injunctive relief. See Dep’t of the Army v. Blue Fox, Inc., 525 U.S. 255, 260-61, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (describing Section 702 as waiving the Government’s immunity from actions seeking relief other than money damages); Trudeau v. FTC, 456 F.3d 178, 186 (D.C.Cir.2006) (“[T]here is no doubt that § 702 waives the Government’s immunity from actions seeking relief other than money damages.”) (internal quotation omitted). The Government contends, however, that plaintiffs’ claims fall within an exception to Section 702 that provides: “Nothing herein ... affects other limitations on judicial review .... ” 5 U.S.C. § 702. The Government further argues that the Anti-Injunction Act presents just such a barrier to judicial relief in this case because of the Act’s provision that “no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.” 26 U.S.C. § 7421(a).
We agree with the Government that the Anti-Injunction Act precludes plaintiffs’ second claim&emdash;related to collection of tax *143 es. See Bob Jones Univ. v. Simon, 416 U.S. 725, 726-27, 749-50, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). In asserting that claim, plaintiffs seek to restrain the Government’s collection of taxes, which is precisely what the Anti-Injunction Act prohibits, notwithstanding that plaintiffs have couched their tax collection claim in constitutional terms. See Alexander v. “Americans United” Inc., 416 U.S. 752, 759-60, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974).
Plaintiffs also raise, however, a straight First Amendment Petition Clause claim&emdash;namely, that they have a right to receive a government response to or official consideration of their various petitions. By its terms, the Anti-Injunction Act does not bar that claim, and Section 702 waives the Government’s sovereign immunity from this suit for injunctive relief, at least with respect to plaintiffs’ allegations regarding actions of certain of the named defendants. See 26 U.S.C. § 7421; cf. Trudeau, 456 F.3d at 187. We therefore will consider that claim on the merits.
Ill
The First Amendment to the Constitution provides: “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.” U.S. Const, amend. I. Plaintiffs contend that they have a right under the First Amendment to receive a government response to or official consideration of a petition for a redress of grievances. We disagree.
In cases involving petitions to state agencies, the Supreme Court has held that the Petition Clause does not provide a right to a response or official consideration. In Smith v. Arkansas State Highway Employees, for example, state highway commission employees argued that a state agency violated the First Amendment by not responding to or considering grievances that employees submitted through their union. See 441 U.S. 463, 463-64 & n. 1, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). In response, the Court held that “the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it.” Id. at 465, 99 S.Ct. 1826.
Likewise, in Minnesota State Board for Community Colleges v. Knight, the Supreme Court evaluated a state law that required public employers to discuss certain employee matters exclusively with a union representative; this prevented nonunion employees from discussing those matters with their employers. 465 U.S. 271, 273, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). Holding that the state statutory scheme had not “unconstitutionally denied an opportunity to participate in them public employer’s making of policy,” the Court reiterated: “Nothing in the First Amendment or in this Court’s case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals’ communications on public issues.” Id. at 285, 292, 104 S.Ct. 1058. Therefore, the Court concluded that individuals “have no constitutional right as members of the public to a government audience for their policy views.” Id. at 286, 104 S.Ct. 1058.
Plaintiffs contend that Smith and Knight do not govern their claims in this case because those cases addressed petitions to state officials regarding public policy, not claims that the Federal Government has violated the Constitution. Plaintiffs’ attempted distinction is at best strained. In both cases, the Supreme Court flatly stated that the First Amend *144 ment, which has been incorporated against the States by the Fourteenth Amendment, does not provide a right to a response to or official consideration of a petition. Knight, 465 U.S. at 285, 104 S.Ct. 1058; Smith, 441 U.S. at 465, 99 S.Ct. 1826. Nothing in the two Supreme Court opinions hints at a limitation on their holdings to certain kinds of petitions or certain levels of Government. In short, the Supreme Court precedents in Smith and Knight govern this case.
IV
Plaintiffs cite the work of several commentators who suggest that Smith and Knight overlooked important historical information regarding the right to petition. Those commentators point to the government practice of considering petitions in some quasi-formal fashion from the 13th century in England through American colonial times — a practice that continued in the early years of the American Republic. Based on this historical practice, plaintiffs and these commentators contend that the Petition Clause should be interpreted to incorporate a right to a response to or official consideration of petitions. See, e.g., Stephen A. Higginson, A Short History of the Right to Petition Government for the Redress of Grievances, 96 Yale L.J. 142, 155 (1986); James E. Pfander, Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government, 91 Nw. U.L. Rev. 899, 904-05 & n. 22 (1997); Julie M. Spanbauer, The First Amendment Right to Petition Government for a Redress of Grievances: Cut From a Different Cloth, 21 Hastings Const. L.Q. 15, 17-18 (1993); Note, A Petition Clause Analysis of Suits Against the Government: Implications for Rule 11 Sanctions, 106 HaRV. L. Rev. 1111, 1116-18 (1993); cf David C. Frederick, John Quincy Adams, Slavery, and the Disappearance of the Right of Petition, 9 Law & Hist Rev. 113, 116-18, 141 (1991).
Other scholars disagree, arguing based on the plain text of the First Amendment that the “right to petition the government for a redress of grievances really is just a right to petition the government for a redress of grievances.” Gary Lawson & Guy Seidman, Downsizing the Right to Petition, 93 Nw. U.L. Rev. 739, 766 (1999); cf Norman B. Smith, “Shall Make No Law Abridging ... ”: An Analysis of the Neglected, but Nearly Absolute, Right of Petition, 54 U. Cin. L. Rev. 1153, 1190-91 (1986). These scholars note that the Petition Clause by its terms refers only to a right “to petition”; it does not also refer to a right to response or official consideration. See N. Bailey, An UNiversal Etymological English Dictionary (24th ed. 1782) (“To petition”: “to present or put up a Petition”); S. Johnson, A Dictionary Of The English Language (6th ed. 1785) (“To petition”: “To solicite; to supplicate”). As they suggest, moreover, the Framers and Ratifiers did not intend to incorporate every historical practice of British or colonial governments into the text of the Constitution. See Lawson & Seidman, 93 Nw. U.L. Rev. at 756-57; cf. Williams v. Florida, 399 U.S. 78, 92-93, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 274-76, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (“Despite this recognition of civil exemplary damages as punitive in nature, the Eighth Amendment did not expressly include it within its scope.”).
We need not resolve this debate, however, because we must follow the binding Supreme Court precedent. See Tenet v. Doe, 544 U.S. 1, 10-11, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005). And under that precedent, Executive and Legislative responses to and consideration of petitions are en *145 trusted to the discretion of those Branches.
The judgment of the District Court is affirmed.

So ordered.