Schulz v Town Bd. of the Town of Queensbury (2019 NY Slip Op 07667)





Schulz v Town Bd. of the Town of Queensbury


2019 NY Slip Op 07667


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

527707

[*1]Robert L. Schulz, Appellant,
v
Town Board of the Town of Queensbury et al., Respondents.

Calendar Date: September 3, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Robert L. Schulz, Queensbury, appellant pro se.
Miller, Mannix, Schachner & Hafner, Glens Falls (Jacquelyn P. White of counsel), for respondents.



Mulvey, J.
Appeals (1) from a judgment of the Supreme Court (Muller, J.), entered September 20, 2018 in Warren County, which, among other things, granted defendants' cross motion to dismiss the amended complaint, and (2) from an order of said court, entered February 26, 2019 in Warren County, which, among other things, upon reargument, adhered to its prior decision granting defendants' cross motion to dismiss.
In 2013, the Town of Queensbury, Warren County began considering the establishment of a sanitary sewer district to serve a certain portion of the Town. In September 2016, defendant Town Board of the Town of Queensbury completed its review under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), issued a negative declaration stating that the proposed sewer district would have no significant environmental impacts, and approved a resolution to establish the sewer district. Plaintiff, who did not participate in the public hearing, attended a Town Board meeting in October 2016 where he read aloud and submitted to the Town Board a document he labeled "Petition for the Redress of Grievances Regarding the Proposed [sewer district]." The Town Board did not respond to this document. In November 2017, after receiving approval from the State Comptroller (see Town Law § 209-f), the Town Board adopted a final order establishing the sewer district. On June 4, 2018, plaintiff read and submitted to the Town Board a petition labeled the same as his October 2016 document. On July 2, 2018, the Town Board accepted a bid to commence construction on the sewer project.
That same day, plaintiff commenced this action against the Town Board and defendant John Strough, the Town Supervisor, seeking declaratory and injunctive relief, including a temporary restraining order. Defendants cross-moved to dismiss the complaint. Supreme Court, among other things, granted the cross motion and dismissed the complaint on the bases that plaintiff's SEQRA claims were time-barred and his constitutional claims failed to state a cause of action (61 Misc 3d 1202[A] [Sup Ct, Warren County 2018]). Plaintiff then moved to reargue and renew. Although the court stated that it was denying his motion (62 Misc 3d 1225[A] [Sup Ct, Warren County 2019]), we view the decision as essentially granting reargument but adhering to the court's prior determination (see Galway Co-Op.Com, LLC v Niagara Mohawk Power Corp., 171 AD3d 1283, 1284 [2019]; Flisch v Walters, 42 AD3d 682, 683 [2007]). Plaintiff appeals from the judgment dismissing his complaint and from the order upon reconsideration.
Plaintiff does not have standing to raise the SEQRA claims. "In land use matters especially, [the Court of Appeals] ha[s] long imposed the limitation that the plaintiff, for standing purposes, must show that [he or she] would suffer direct harm, injury that is in some way different from that of the public at large [and] [t]his requirement applies whether the challenge to governmental action is based on a SEQRA violation, or other grounds" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774 [1991] [internal citations omitted]; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 304 [2009]; Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d 1006, 1007 [2013], lv denied 21 NY3d 862 [2013]). Plaintiff does not reside in the Town. Although his homestead apparently straddles the Town line such that 1.2 acres of his land is situated in the Town, his property is located outside of — and approximately 15 miles away from — the sewer district. Moreover, plaintiff's status as a taxpayer, by itself, does not grant him standing to challenge the establishment of the sewer district (see Tilcon N.Y., Inc. v Town of New Windsor, 172 AD3d 942, 944 [2019]; Matter of Kopald v Supervisor & Town Bd. of Town of Highlands, 34 AD3d 810, 810 [2006]). As plaintiff has not alleged that the Town Board's SEQRA determination and approval of the sewer district created a direct harm to him that is different from that of the public at large, he does not have standing to challenge these actions (see Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d at 1007-1009).
Plaintiff's SEQRA challenge is also time-barred. Regardless of how a plaintiff may label or style his or her claim, courts must look to the core of the underlying claim and the relief sought and, if the claim could have been properly addressed in the context of a CPLR article 78 proceeding, a four-month statute of limitations will apply (see Northern Elec. Power Co., L.P. v Hudson Riv.-Black Riv. Regulating Dist., 122 AD3d 1185, 1187-1188 [2014]; Bango v Gouverneur Volunteer Rescue Squad, Inc., 101 AD3d 1556, 1557 [2012]). Thus, even though plaintiff couched his requested relief in the form of a declaratory judgment action, his allegations of SEQRA violations are subject to a four-month statute of limitations (see Matter of Young v Board of Trustees of Vil. of Blasdell, 89 NY2d 846, 848 [1996]; Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 203 [1987]; Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1260 [2017]). Although plaintiff asserts that the SEQRA violations arose, at least in part, due to the Town Board providing knowingly false answers on the environmental assessment form, the complaint does not contain a separate fraud cause of action that would be governed by a longer statute of limitations; neither does plaintiff assert that he was prevented from filing suit earlier due to the allegedly false answers. Considering that the Town Board completed its SEQRA review and issued a negative declaration in September 2016 and gave final approval to the sewer project in November 2017, plaintiff's challenges thereto in his July 2018 complaint were untimely.
Supreme Court did not err in concluding that plaintiff's constitutional allegations failed to state a cause of action. Plaintiff alleged that the Town Board was constitutionally obligated to respond to his petitions for redress of grievances. Both the State and Federal Constitutions prohibit the government from making any law that abridges the right of the people "to petition the [g]overnment for a redress of grievances" (US Const, First Amend; see NY Const, art I, § 9 [stating "(n)o law shall be passed abridging the rights of the people . . . to petition the government, or any department thereof"]). However, the Supreme Court of the United States has stated that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues" (Minnesota State Bd. for Community Colleges v Knight, 465 US 271, 285 [1984]; see Smith v Arkansas State Highway Empls., Local 1315, 441 US 463, 465 [1979]; accord Knight First Amendment Inst. at Colombia Univ. v Trump, 302 F Supp 3d 541, 576 [SD NY 2018], affd 928 F3d 226 [2d Cir 2019]). Stated otherwise, the First Amendment does not "guarantee[] a citizen's right to receive a government response to or official consideration of a petition for redress of grievances" (We the People Found., Inc. v United States, 485 F3d 140, 141 [DC Cir 2007], certs denied 552 US 1102 [2008]).
Plaintiff attempts to distinguish between petitions that address public policy — with plaintiff conceding that the Supreme Court of the United States has held that they are not entitled to a direct response — versus petitions asserting that the government has violated laws or the constitution — with plaintiff arguing that the petitioned government agency or official must respond to them. However, the federal Court of Appeals for the District of Columbia Circuit has already rejected that argument, noting that "[n]othing in the [relevant and binding] Supreme Court opinions hints at a limitation on their holdings to certain kinds of petitions" (We the People Found., Inc. v United States, 485 F3d at 144 [emphasis omitted]). Although some commentators suggest that the Supreme Court failed to consider important historical information and, based on this information, the Petition Clause should be interpreted to include a right to a response to or official consideration of petitions (see e.g. James E. Pfander, Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government, 91 Nw U L Rev 899, 904-905 & 905 n 22 [1997]; Julie M. Spanbauer, The First Amendment Right to Petition Government for a Redress of Grievances: Cut From a Different Cloth, 21 Hastings Const LQ 15, 17-19 [1993]; Stephen A. Higginson, A Short History of the Right to Petition Government for the Redress of Grievances, 96 Yale LJ 142, 155 [1986]; compare Gary Lawson & Guy Seidman, Downsizing the Right to Petition, 93 Nw U L Rev 739, 766 [1999]; Norman B. Smith, "Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition, 54 U Cin L Rev 1153, 1190-1191 [1986]), "we must follow the binding Supreme Court precedent" interpreting the First Amendment (We the People Found., Inc. v United States, 485 F3d at 144).
Despite the ability of New York courts to interpret our State Constitution in a way that provides more expansive rights than similar provisions in the Federal Constitution (see e.g. People v Scott, 79 NY2d 474, 478 [1992]; People v P.J. Video, Inc., 68 NY2d 296, 302-304 [1986], cert denied 479 US 1091 [1987]; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159 [1978]), we see no reason to do so here. Requiring a response to every petition, especially in this digital age in which petitions can be copied and circulated with great speed and ease, could create a crushing burden on government agencies and officials and waylay them from the performance of their duties (see Norman B. Smith, "Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition, 54 U Cin L Rev at 1190-1191 ["with our present capacity for multiplying documents, the business of government could be halted if each paper produced in a massive petition campaign is addressed"]). Rather, in our republican form of government in which direct public participation is limited, "disapproval of officials' responsiveness . . . is to be registered principally at the polls" (Minnesota State Bd. for Community Colleges v Knight, 465 US at 285). Because plaintiff requested a declaration and Supreme Court did not grant one (see CPLR 3001), we declare that defendants were not obligated to respond to plaintiff's petitions for redress of grievances.
Egan Jr., J.P., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the judgment and order are modified, on the law, without costs, by declaring that defendants were not obligated to respond to plaintiff's petitions for redress of grievances dated October 17, 2016 and June 4, 2018, and, as so modified, affirmed.